## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**ALEX PENLAND,**

        **Petitioner,**

           **v.**

**WARDEN, TOLEDO
CORRECTIONAL INSTITUTION**

        **Respondent.**

           **Case No. 1:18-cv-648**
           **JUDGE DOUGLAS R. COLE**
           **Magistrate Judge Merz**

### OPINION AND ORDER

This cause comes before the Court on Petitioner Alex Penland's Objections to various Orders the Magistrate Judge issued. These Objections include:

- November 25, 2019, Objections (Doc. 29) to the Magistrate Judge's Order (Doc. 26) Denying Penland's Motion to Amend (Doc. 25).

- December 16, 2019, Objections (Doc. 42) to the Magistrate Judge's Order (Doc. 39) Denying Penland's Motion to Appoint Counsel (Doc. 35).

- January 5, 2020, Objections (Doc. 60) and March 9, 2020, Supplemental Objections (Doc. 74) to the Magistrate Judge's Order (Doc. 53) Denying Penland's second Motion to Amend (Doc. 30).

- January 30, 2020, Objections (Doc. 66) to the Magistrate Judge's Order (Doc. 63) Unsealing and Denying Penland's Motion for Authorization of Expense for an Expert. (Doc. 62).

- July 24, 2020, Objections (Doc. 80) to the Magistrate Judge's Order (Doc. 75) Denying Penland's Motion for Leave to Conduct Discovery (Doc. 38), Penland's second Motion for an Evidentiary Hearing (Doc. 67), Penland's Motion for Leave to File a third Amended Petition (Doc. 71), Penland's fourth Motion to Stay (Doc. 72), and Penland's supplementary briefing in support of his second Motion for an Evidentiary Hearing (Doc. 73).

For the reasons stated more fully below, the Court **OVERRULES** Penland's Objections dated November 25, 2019 (Doc. 29), December 16, 2019 (Doc. 42), January

5, 2020 (Doc. 60), January 30, 2020 (Doc. 66), March 9, 2020 (Doc. 74), and July 24, 2020 (Doc. 80).

## BACKGROUND

In May 2015, a jury in the Hamilton County Court of Common Pleas convicted Penland of murder (with a firearm specification), trafficking in heroin, and having a weapon under a disability. (Verdict Forms, Doc. 8, #63–69). The court subsequently sentenced Penland to twenty-eight years to life in prison. (J. Entry, Doc. 8, #77).

On July 2, 2015, Penland appealed to the Ohio First District Court of Appeals. (Notices of Appeal, Doc. 8, #80–81). The First District affirmed the trial court's judgment on May 6, 2016. (J. Entry, Doc. 8, #251–56). Penland did not immediately appeal to the Ohio Supreme Court.

On June 27, 2016, Penland moved to reopen his direct appeal under Ohio App. R. 26(B), alleging ineffective assistance of appellate counsel. (26(B) App., Doc. 8, #129). The First District denied Penland's Motion on May 3, 2017, finding that "Penland has failed to demonstrate a genuine issue as to whether he has a colorable claim of ineffective assistance of counsel on appeal." (Entry Denying App. for Reopening Appeals, Doc. 8, #244). Again, Penland did not immediately appeal to the Ohio Supreme Court.

On July 7, 2017, Penland filed a delayed notice of appeal with the Ohio Supreme Court appealing the First District's decision affirming his conviction. (Mot. to File Delayed Appeal, Doc. 8, #248). On September 13, 2017, the Ohio Supreme

Court denied Penland's motion for delayed appeal and dismissed the case. (Ord. Denying Mot. for Delayed Appeal, Doc. 8, #257).

While Penland's motion to reopen his direct appeal was pending, he also allegedly filed a Motion for Post-Conviction Relief. (Return of Writ, Doc. 9, #1138). Curiously, this Motion does not appear in the state court record and is not listed on the state court docket sheets. (*Id.*). Nonetheless, on September 26, 2016, the trial court issued an order denying Penland's Motion. (Entry Overruling Mot. for Post-Conviction Relief, Doc. 8, #258). Penland filed two notices of appeal (Notices of Appeal, Doc. 8, #260, 262). The First District consolidated Penland's two notices into a single appeal, which it denied on March 7, 2018. (Accelerated Calendar Scheduling Ord. and Consolidating Appeals, Doc. 8, #271; J. Entry, Doc. 8, #295). The appellate court stated that:

> Penland, in his appellate brief, asserts that he filed "a Motion For Post-Conviction [Relief] on or about September 23rd, 2016." But the record does not reflect the filing in either case of a motion seeking post-conviction relief. Therefore, the record cannot be said to manifest the errors of which Penland now complains.

(J. Entry, Doc. 8, #295–96). Penland filed a notice of appeal with the Ohio Supreme Court on April 23, 2018. (Notice of Appeal, Doc. 8, #297). On July 5, 2018, the Ohio Supreme Court declined to accept jurisdiction. (Entry Declining to Accept Jurisdiction, Doc. 8, #315).

On May 15, 2018, while his notice of appeal at the Ohio Supreme Court was pending, Penland also filed a Motion for Relief from Judgment under Ohio Civ. R. 60(B). (Mot. for Relief from J., Doc. 8, #316). Two days later, the trial court overruled

3

Penland's Motion. (Entry Overruling Mot. for Relief from J., Doc. 8, #395). Penland filed a notice of appeal with the First District on June 18, 2018. (Notice of Appeal, Doc. 8, #396).

As for his efforts in federal court, Penland filed a Petition for a Writ of Habeas Corpus ("Petition" or "Habeas Petition," Doc. 1) in this Court on September 14, 2018. Pursuant to Cincinnati General Order 14-01, that petition was assigned to a Magistrate Judge for pretrial matters, and to issue a Report and Recommendation ("R&R") on any dispositive motions. The Warden filed an Answer (Doc. 9) on February 27, 2019. (At the time the Warden filed that Answer, the First District appeal cited immediately above was still pending. (*Id*. at #1140–41).) Penland filed a Reply (Doc. 16) on April 12, 2019. Since that time, Penland has filed multiple motions requesting, among other things, to amend his petition, to stay this matter, to obtain an evidentiary hearing, to receive appointed counsel, and to conduct discovery. The Magistrate Judge has denied—or denied in part—each of these requests, and Penland objected. Accordingly, in this Opinion, the Court will address each of Penland's outstanding Objections to the Magistrate Judge's Orders.

## LEGAL STANDARD

Under Fed. R. Civ. P. 72(a), when a case has been referred to a Magistrate Judge, the Magistrate Judge may issue an Order on any "pretrial matter [that is] not dispositive of a party's claim or defense." After the Magistrate Judge issues his or her Order, the parties "may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a).

4

If any parties file timely objections, "the district judge in the case must consider [them] and modify or set aside any part of the [Magistrate Judge's] order that is clearly erroneous or contrary to law." *Id.* Under the clearly-erroneous-or-contrary-to-law standard, the district judge "review[s] findings of fact for clear error and … review[s] matters of law de novo." *Bisig v. Time Warner Cable, Inc.,* 940 F.3d 205, 219 (6th Cir. 2019) (quoting *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d. Cir. 2017)) As the Sixth Circuit has explained, a "factual finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. And an order is 'contrary to the law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (cleaned up). This standard of review applies, however, only to any portion of the Magistrate Judge's Order to which a party has properly objected. *See, e.g.*, *Bustetter v. Ceva Logistics U.S., Inc.,* No. CV-18-58, 2019 WL 1867430, at *2 (E.D. Ky. Apr. 25, 2019). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins,* 7 F. App'x 354, 356 (6th Cir. 2001).

That being said, in this case, the petitioner is proceeding pro se. A pro se litigant's pleadings are to be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). At the same time, pro se litigants must still comply with the

procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## MOTIONS TO AMEND

Since initiating this case, Penland has moved to amend his Petition three times. (Docs. 25, 30, 71). He filed his first Motion to Amend on November 12, 2019. (Doc. 25). After the Magistrate Judge denied this first Motion (*see* Doc. 26), Penland filed Objections (Doc. 29). But before this Court ruled on those Objections, Penland rendered them moot[1] by subsequently filing a second Motion to Amend (Doc. 30). The Magistrate Judge denied that Second Motion as well (*see* Doc. 53); Penland objected (Doc. 60).[2] But again, before this Court ruled on Penland's Objections to the denial of his second Motion to Amend, Penland mooted them by filing a third Motion to Amend (Doc. 71). The Magistrate Judge then denied that Motion as well (*see* Doc. 75), and Penland objected (Doc. 80), this time without moving to amend again. Thus, the Magistrate Judge's Order on the third Motion to Amend, along with the accompanying Objections, are now before this Court.

The Magistrate Judge denied that motion because he found Penland had unduly delayed in moving to amend. (May 4, 2020, Order, Doc. 75, #1976). In his Objections, Penland argues that, because he moves to amend under Fed. R. Civ. P. 15(c)(1)(B), rather than Rule 15(a), undue delay is not a proper basis to deny his Motion to Amend. (Doc. 80, #1998). Thus, Penland argues, the Magistrate Judge's

---

[1] *See, e.g.*, *Vazquez v. Conanan,* 1:19-cv-45, 2020 WL 1911553, at *2 (E.D. Cal. Apr. 20, 2020) ("Plaintiff's first motion to amend is moot in light of the filing of the second motion.").

[2] Penland subsequently refiled these Objections as docket entry 74.

Order (Doc. 75) denying his third Motion to Amend (Doc. 71) should be overruled. The Court rejects this argument.

In ascribing significance to the differences in language between Rule 15(a) and Rule 15(c)(1)(B), Penland incorrectly conflates two separate issues. Rule 15(a) governs the *procedures* for amending pleadings (when, as here, a party is seeking to do so before trial). Rule 15(c)(1), on the other hand, governs whether a particular amendment (whether that amendment is accomplished under Rule 15(a) or 15(b)) *relates back* to the date of original pleading, which can be important for statute of limitations purposes. Penland may be correct that Rule 15(c)(1)(B) does not consider undue delay as a factor in determining whether a given amendment relates back to the original date of pleading. But to proceed with an amendment at all, Penland must first obtain leave to amend under Rule 15(a)—where undue delay *is* a factor courts must consider. *McGarity v. Birmingham Pub. Schs.,* No. 20-2176, 2021 WL 4568050, at *6 (6th Cir. Sept. 7, 2021) ("[D]iscretion to deny leave is appropriate due to undue delay, bad faith, or dilatory motive on the part of the movant ….") (internal quotation marks and modifications omitted). Because Penland does not dispute the Magistrate Judge's determination that undue delay occurred here—a factual finding in any event subject to clear error review—and because Penland provides no other basis to reject the Magistrate Judge's Order (Doc. 75) denying his third Motion to Amend (Doc. 71), Penland's Objections (Doc. 80) are accordingly **OVERRULED**.

## MOTIONS TO STAY

In addition to filing three Motions to Amend, Penland has also filed five Motions to Stay (Docs. 10, 27, 58, 72, 85). The Magistrate Judge granted in part and denied in part the first of these Motions on May 28, 2019. (*See* Doc. 20). Penland then sought reconsideration[3] (Doc. 21) of those portions of the Magistrate Judge's Order denying his first Motion to Stay, which the Magistrate Judge denied. (Doc. 23).

Penland subsequently filed four more Motions to Stay. He filed the second Motion (Doc. 27) on November 18, 2019, which the Magistrate Judge denied on November 19, 2019 (Doc. 28). Penland did not object, but instead filed his third Motion to Stay (Doc. 58) (which he incorrectly styled as his fourth Motion to Stay) on December 31, 2019. The Magistrate Judge denied that Motion on January 3, 2020. (Doc. 59). Again, Penland did not object, instead filing a fourth Motion to Stay (Doc. 72) on March 3, 2020. The Magistrate Judge denied that Motion on May 4, 2020. (Doc. 75). This time, Penland objected (Doc. 80)—and the Court has yet to rule on those Objections. Further complicating matters, though, after Penland filed Objections to the Magistrate Judge's denial of his fourth Motion to Stay (Doc. 75), Penland filed and then subsequently withdrew a fifth Motion to Stay (Docs. 85, 89).

---

[3] Penland styled this Motion (Doc. 21) as "Petitioner's Objection and Motion for Reconsideration of [the] Court's Decision [and] Order granting in part [and] denying in part Petitioner's [first] Motion to Stay." The Magistrate Judge construed this filing as a Motion for Reconsideration (Doc. 22), which he subsequently denied. (Doc. 23). Penland did not object to this construction, which the Court thus accepts.

By the Court's estimation, that leaves only Penland's Objections to the Magistrate Judge's Order denying his fourth Motion to Stay as potentially unaccounted for. The Court describes these objections as only "*potentially* unaccounted for," because it is not clear if Penland still wishes to stay his case, in light of the fact that he filed and then withdrew a fifth Motion to Stay. (Docs. 85, 89). Out of an abundance of caution, however, the Court will review his outstanding Objections (Doc. 80) to the denial (Doc. 75) of his fourth Motion to Stay (Doc. 72) below.

In his fourth Motion to Stay, Penland explains that he seeks to stay these habeas proceedings "so that he may return to the state court and fully exhaust his claims in a mixed petition." (Doc. 72, #1923). Specifically, Penland seeks to pursue his first *Brady* claim, which is based on the state's failure to disclose three documents Penland alleges could have been used to impeach one of the state's witnesses, Steve Breunig.[4] These three documents include: (1) "a report from the Police Officer Melissa Emody to Cincinnati Chief of Police Jeffrey Blackwell dated February 25, 2015, which refers to public safety incidents occurring at … the Golden Nugget bar. Among the incidents reported is the July 25, 2014 homicide of which Penland was convicted"; (2) "an undated letter from the South Fairmont Community Council to Patricia Simpson of the Cincinnati Police Vice Unit reporting the Council's concern about polices calls at the Golden Nugget and particularly the homicide in question"; and (3) "an April 13, 2015 letter from the Cincinnati City Manager to the City Council's

---

[4] Breunig was the owner of the Golden Nugget, the restaurant where the shooting giving rise to Penland's state criminal conviction occurred. (May 4, 2020, Order, Doc. 75, #1980).

Law and Public Safety Committee objecting to the renewal of the liquor permit of the Golden Nugget." (May 4, 2020, Order, Doc. 75, #1982 (internal citation omitted)). Penland argues that these three documents shed light on Breunig's possible bias and should have been disclosed. (Fourth Mot. to Stay, Doc. 72, #1930).

In reviewing Penland's fourth Motion to Stay, the Magistrate Judge observed that "stay and abeyance should be available only in limited circumstances .... [T]he district court would abuse its discretion if it were to grant [a petitioner] a stay when his unexhausted claims are plainly meritless." (Doc. 75, #1985 (citing *Rhines v. Weber,* 544 U.S. 269, 277 (2005)).

Applying that principle here, the Magistrate Judge rejected Penland's fourth Motion to Stay, concluding that Penland's proposed *Brady* claim was plainly without merit. The Magistrate Judge reached this conclusion for two reasons. First, he noted that Penland could not satisfy *Brady*'s materiality prong because the documents at issue "do not add appreciably to the information on Breunig's possible bias to have affected the outcome of the case." (*Id.* at #1984). Additionally, the Magistrate Judge found that Penland's *Brady* claim was unlikely to succeed because eighteen months had elapsed between the time Penland discovered the documents in question and the time when the Magistrate Judge ruled on Penland's fourth Motion. (*Id.* at #1984–85). As the Magistrate Judge explained, Penland discovered these documents "eighteen months ago. Nothing has prevented him from filing a motion for leave to file a delayed motion for new trial in the intervening time. Thus the Hamilton County Common

Pleas Court [was] unlikely to find [Penland] acted diligently in pursuing this matter," and would likely decline to review his claim on the merits. (*Id.*).

Penland offers only one objection to the Magistrate Judge's denial of his fourth Motion to Stay. According to Penland, because motions to stay "can be dispositive of the claims being exhausted in state court," the Magistrate Judge should have responded to Penland's Motion with an R&R, rather than an Order. (July 24, 2020, Obj., Doc. 80, #2005–06). Accordingly, Penland argues, the Magistrate Judge's Order denying his fourth Motion should be overruled.

The Court need not decide here whether Penland is correct that the Magistrate Judge should have issued an R&R rather than an Order in response to his fourth Motion to Stay. That is because, even if Penland were to prevail on that argument, he is incorrect that his Motion to Stay would automatically be granted as a result.

When a magistrate judge issues an order in a matter, district courts apply a different standard of review depending on whether the matter at issue is dispositive or non-dispositive. The Court reviews orders on non-dispositive matters, as previously explained, under a clearly-erroneous-or-contrary-to-law standard pursuant to Fed. R. Civ. P. 72(a). In contrast, the Court reviews orders addressing dispositive matters de novo as to "any part of the magistrate judge's disposition that has been properly objected to" under Fed. R. Civ. P. 72(b).

Thus, when a magistrate judge issues an order under Rule 72(a) when he or she should have instead issued an R&R under Rule 72(b), the result is not—as Penland suggests—that the court automatically reverses the magistrate judge's

determination. Rather, in such cases, the proper course of action is to simply treat the order as if it *were* an R&R and apply a de novo standard of review to those portions to which any party properly objects. *See, e.g.*, *Ma v. Am. Elec. Power Co.*, 697 F. App'x 448 (6th Cir. 2017) (finding that a magistrate judge's order should have been issued as an R&R and remanding to the district court for de novo review).

But therein lies Penland's problem: aside from arguing that the Magistrate Judge improperly issued an Order, rather than an R&R, he has not actually offered any substantive objections to the Magistrate Judge's findings for the Court to consider. Accordingly, even if he were correct that the Order should have been an R&R, it is essentially an unobjected R&R, giving rise to potential forfeiture of any arguments that Penland could have made. *Raglin v. Mitchell,* No. 1:00-cv-767, 2006 WL 2711674, at *3 (S.D. Ohio Jun. 29, 2006).

That said, the Advisory Committee notes to Rule 72(b) of the Federal Rules of Civil Procedure suggest that courts should review even unobjected R&Rs, albeit under a more permissive "clear error" standard. Accordingly, although Penland offers no substantive objections to the Magistrate Judge's R&R/Order, the Court reviews it for clear error—and finds none present.

As the Magistrate Judge correctly explained, under *Rhines,* a court should not stay habeas proceedings to allow a petitioner to return to state court to exhaust previously unexhausted claims if the proposed claims are "plainly meritless." (May 4, 2020, Order, Doc. 75, #1985 (citing *Rhines,* 544 U.S. at 277)). Further, the Magistrate Judge properly concluded that Penland's proposed *Brady* claim is plainly meritless

because the undisclosed documents would not "disclose any material source of bias by Breunig against Penland beyond what would have been expected in the circumstances: a bar owner who does not want shootouts in his parking lot." (May 28, 2019, Order, Doc. 20, #1232).

Moreover, staying these proceedings would be improper because Penland's claims are almost certainly untimely under Ohio law, and thus granting him leave to pursue them in state court would be futile. Indeed, Ohio's First Appellate District had already reached that conclusion before the Magistrate Judge even issued his May 4, 2020, Order denying Penland's Fourth Motion to Stay.

Specifically, on April 8, 2020, the First Appellate District issued a decision affirming a Court of Common Pleas order dismissing Penland's motion for post-conviction relief and a new trial—a motion based on exactly the same newly-discovered evidence Penland presents here. *Ohio v. Penland,* No. B 1404265 (Ohio C.P. Hamilton County Dec. 4, 2019) (Entry Denying Def.'s Mot.).

In that Decision, the First Appellate District rejected Penland's request for a new trial or other post-conviction relief as untimely. *Ohio v. Penland*, No. C-190323, 2020 Ohio App. LEXIS 1368 (Ohio Ct. App. Apr. 8, 2020). Starting with Penland's request for a new trial: the First Appellate District explained that a defendant may obtain a new trial under Ohio Criminal Rule 33(A)(2) on the grounds of prosecutorial misconduct; Rules 33(A)(1) and 33(E)(5) on the grounds of ineffective assistance of counsel; or under Rule 33(A)(6) on the ground that "new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have

13

discovered and produced at trial." *Id.* at *2–3. Each of these Rules, however, would have ordinarily required Penland to move for a new trial within a certain number of days after the return of the verdict—deadlines Penland missed. *Id.* at *3.

Accordingly, the First Appellate District reasoned, Penland would have needed to obtain leave of the Court to file a motion for a new trial. But that was not a viable path forward either. For example, under Rule 33(A)(6), a court may only grant leave to file a motion for a new trial on the grounds of newly discovered evidence if the defendant offers "clear and convincing proof that the defendant [had been] unavoidably prevented from [timely] discovering the evidence." *Id.* at *3. Similarly, the Court may only grant leave to file a motion for a new trial on any other grounds upon a showing of "clear and convincing proof that the defendant [had been] unavoidably prevented from [timely] filing [his new-trial] motion." *Id.*

The First Appellate District, though, found that Penland could not satisfy the requirements to obtain leave to file an untimely motion for a new trial. As the Court explained,

> [t]he record shows that the state provided a recording of Breunig's 911 call in discovery and questioned him at trial concerning the nonrenewal of his liquor license. Thus, Penland failed to sustain his burden of proving by clear and convincing evidence that he had been unavoidably prevented from timely discovering that evidence or from timely seeking a new trial on the grounds of prosecutorial misconduct or ineffective assistance of counsel concerning that evidence.

*Id.* at *3–4.

The First Appellate District also rejected Penland's request for other post-conviction relief based on the newly discovered evidence. Because Penland had

14

missed the deadlines for filing this motion for post-conviction relief under O.R.C. 2953.21(A)(2), and had in fact already filed a motion for post-conviction relief previously, the appeals court could only entertain this new motion if Penland satisfied the requirements for late or successive post-conviction claims. *Id.* at *4 And, because Penland's motion was predicated on the discovery of new evidence, this meant he was required to show that "he had been unavoidably prevented from discovering the facts upon which his postconviction claims depend[ed]." *Id.* But, again, the First Appellate District found Penland could not make this showing, and thus rejected his motion for post-conviction relief. *Id.* at *5.

Finally, the First Appellate District considered Penland's Motion to the extent he sought to have his conviction held void. Although the First Appellate District noted that "a court always has jurisdiction to correct a void judgment," "a judgment of conviction is void only to the extent that a sentence is unauthorized by statute or does not include a statutorily mandated term or if the trial court lacks subject-matter jurisdiction or the authority to act." *Id.* at *5. Thus, the Court reasoned, Penland's claims based on newly discovered evidence—even if demonstrated—"would not have rendered his convictions void." *Id.*

Based on state court records, it does not appear that Penland ever appealed the First Appellate District's April 8, 2020, Decision to the Ohio Supreme Court. Because that decision was issued more than two years ago, these claims are now almost certainly time-barred—in which case, granting him leave to pursue them further would be futile. Even if Penland *could* still pursue these claims in state court,

however, the Court finds the First Appellate District's decision persuasive insofar as it shows Penland's claims are highly unlikely to succeed. Accordingly, the Court concludes that staying these proceedings so Penland may pursue these claims in state court would be inappropriate, as they are plainly meritless.

Thus, even accepting Penland's argument that the Magistrate Judge should have issued an R&R rather than an Order, because Penland offers no substantive objections and the Magistrate Judge's findings were not clearly erroneous, the Court **OVERRULES** Penland's Objections (Doc. 80) to the Magistrate Judge's R&R/Order (Doc. 75) denying his fourth Motion to Stay (Doc. 72).

## MOTIONS FOR AN EVIDENTIARY HEARING

Penland filed his first Motion for an Evidentiary Hearing on December 5, 2019 (Doc. 36). The Magistrate Judge issued an Order denying that Motion "without prejudice to renewal on a showing that it was not precluded" by *Cullen v. Pinholster,* 563 U.S. 170 (2011). (Doc. 75, #1978).

Penland then filed a second Motion for an Evidentiary Hearing on February 6, 2020 (Doc. 67), and later filed supplemental briefing (Doc. 73) in support of that motion on March 5, 2020. There, Penland requests an evidentiary hearing addressing two issues. First, Penland seeks to present evidence supporting his ineffective assistance of counsel and prosecutorial misconduct claims on the merits. (Second Mot. for Evidentiary Hr'g, Doc. 67, #1787–88). Second, Penland seeks to present evidence "to establish the existence [of] cause and/or prejudice to excuse any alleged procedural

16

default" of his ineffective assistance of counsel and prosecutorial misconduct claims. (*Id.* at #1788; *see also* Suppl. Briefing, Doc. 73, #1957).

The Magistrate Judge denied Penland's second Motion (Doc. 67) with regard to Penland's request to present evidence supporting his ineffective assistance of counsel and prosecutorial misconduct claims. The Magistrate Judge explained that Penland's Second Motion—like his first—failed to "overcome the barrier erected by *Pinholster.*" (May 4, 2020, Order, Doc. 75, #1978–79). As the Magistrate Judge explained:

> [a]t the very end of [Penland's Supplemental Brief in support of an evidentiary hearing], he states that the evidence he seeks to present at such a hearing was already presented to state courts in connection with his post-conviction relief petition or his application for reopening his direct appeal or his later motion for relief from judgment under Ohio R. Civ. P. 60(b). To overcome the *Pinholster* barrier, [Penland] must show not just that he submitted the evidence, but that the resulting decision of whichever state court made the decision was contrary to or an objectively unreasonable application of clearly established Supreme Court precedent or an unreasonable determination of the facts based on the evidence before the relevant court. He has not done that and so his Second Motion for Evidentiary Hearing is DENIED.

(*Id.* at #1979 (internal citations omitted)).

In his Objections, Penland argues that "he did in fact cite to Supreme Court precedent as they relate" to his claims for prosecutorial misconduct and ineffective assistance of counsel. (Doc. 80, #2006). Specifically, Penland states that his supplemental brief cited—among other cases—*Berger v. United States,* 295 U.S. 78

17

(1974); *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974); and *Crawford v. Washington*, 541 U.S. 36 (2004). (Doc. 80, #2006–07).[5]

Penland's Objections are not persuasive. To be fair, Penland is correct that his supplemental brief cited to Supreme Court precedent. For example, Penland states that he will submit evidence at his proposed hearing demonstrating that "the prosecution knowingly misstat[ed] the facts [and] plac[ed] words into the mouths of witnesses … which they did not say." (Suppl. Briefing, Doc. 73, #1950). Penland argues that "[t]hese issues violate the standards as set forth in *Berger v. United States,* 295 U.S. 78, 88 (1935); *see also Donnelly v. DeChristoforo,* 416 U.S. 637 (1974), and *Crawford v. Washington,* 541 U.S. 36 (2004)." (Doc. 73, #1950 (internal citations cleaned up)). Similarly, Penland also states that he would offer testimony from various witnesses at the hearing which would "go[] toward a *Brady* violation and *Strickland* prejudice." (*See, e.g.*, Doc. 73, #1954).

---

[5] Penland's objections also argue that his Traverse "specifically averred that the state appellate court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court …; or the state court's decision was based on an unreasonable determination of facts in light of the evidence presented in state court proceedings." (Doc. 80, #2007 (citing Traverse, Doc. 34, #1514)).

 While Penland is correct that his Traverse acknowledged the contrary-to-clearly-established-federal-law standard, it does not explain how the state court decision actually violated this standard. Specifically, Penland's Traverse states:

> [t]he state appellate court's decision on Mr. Penland's Ohio App. R. 26(B) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

(Traverse, Doc. 34, #1514). Without more detail explaining how the state court failed to apply clearly established Supreme Court precedent, this excerpt from Penland's Traverse is insufficient to entitle him to an evidentiary hearing.

But, while Penland is correct that his Supplemental Brief in support of an evidentiary hearing *cited* to Supreme Court precedent, that is not sufficient to overcome *Pinholster*. Rather, as the Magistrate Judge correctly explained, Penland must show that the state court's decision was "was contrary to or an objectively unreasonable application of clearly established Supreme Court precedent." (May 4, 2020, Order, Doc. 75, #1979). "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Pinholster,* 563 U.S. at 181 (cleaned up). Penland's supplemental brief fails to meet this demanding standard. Penland's invocation of particular Supreme Court precedent provide little to no explanation as to how Penland thinks the state courts incorrectly applied this precedent—let alone applied it in a manner that was "objectively unreasonable." *See Courser v. Allard,* 969 F.3d 604, 616 (6th Cir. 2020) ("We have cautioned that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed forfeited, and that it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.") (internal quotation marks and modifications omitted). Accordingly, the Court agrees with the Magistrate Judge that an Evidentiary Hearing on Penland's ineffective assistance of counsel and prosecutorial misconduct claims is not warranted at this time.

That still leaves the issue, though, of Penland's separate request for an evidentiary hearing to excuse any alleged procedural default on his prosecutorial misconduct and ineffective assistance of counsel claims. If this proposed hearing were

to occur, Penland states that he would call two witnesses. First, he would call the as-yet unnamed supervisor of the mail room at the Ross Correctional Institution. This supervisor "responded to Penland's [i]nformal [c]omplaint … stating that the institution mailroom did not receive any legal mail for Penland." (Suppl. Briefing, Doc. 73, #1958). Second, Penland would call the as-yet unnamed clerk at the Hamilton County Court of Common Pleas who "filed Penland['s] Petition to Vacate or Set Aside [his] Conviction and Sentence on September 23, 2016," and then allegedly "failed to docket such petition within the court records." (*Id.*).

The Court declines to grant Penland's request for an evidentiary hearing on these issues. This is because, even if Penland could successfully demonstrate cause and prejudice to overcome these procedural bars, his underlying prosecutorial misconduct and ineffective assistant of counsel claims are without merit. Thus, an evidentiary hearing to excuse Penland's procedural default would be futile. *Powell-El v. Hooks,* No. 3:16-cv-109, 2018 WL 2137729, at *3–4 (S.D. Ohio May 9, 2018) (observing that, even if a Petitioner's procedural default was excused, the Petitioner was not entitled to relief because the underlying ineffective assistance of counsel claim was meritless).

For those reasons, the Court **OVERRULES** Penland's Objections (Doc. 80) to the Magistrate Judge's Order (Doc. 75) denying his second Motion for an Evidentiary Hearing (Doc. 67).

## MOTION FOR DISCOVERY

Penland also filed a Motion for Discovery (Doc. 38) on December 5, 2019. As

the Magistrate Judge explains:

> Petitioner seeks to depose Miranda Austin to explore her statement that
> she was never contacted by defense counsel Clyde Bennett although she
> made a statement to the homicide detectives that she saw the person
> who did the shooting who was neither the decedent nor Penland. He
> seeks a copy of video from the scene to submit to a forensic video expert
> to corroborate Austin's expected testimony. Penland seeks to depose 911
> operator Andrea Luck to testify that when he called 911, Steve Breunig,
> the Golden Nugget owner, said he did not see "anything," but only heard
> shots fired. He also seeks to depose Breunig and his trial attorney, Clyde
> Bennett. In support of his prosecutorial misconduct claim, he seeks to
> depose the Assistant Prosecuting Attorney who tried the case, Charles
> Thiemann.

(May 4, 2020, Order, Doc. 75, #1980 (citations omitted)). In his Order, the Magistrate

Judge rejected Penland's Motion for Discovery, explaining that "[a] habeas petitioner

is not entitled to discovery as a matter of course, but only upon a fact-specific showing

of good cause and in the Court's exercise of discretion." (*Id.*). The Magistrate Judge

concluded that good cause does not exist in this case, because any material Penland

would obtain through his proposed discovery would not be admissible under

*Pinholster*. (*Id.* at #1981). Moreover, the Magistrate Judge also expressed concern

that the discovery Penland seeks would be "extensive and therefore would be

expensive. Particularly taking depositions of probably hostile witnesses Bennett and

Thiemann would require appointment of counsel." (*Id.*).

In his Objections, Penland argues that the Magistrate Judge abused his

discretion by denying his Motion for Discovery "simply because counsel needs to be

appointed …. Habeas Rule 6 warrants discovery 'when[ever] it would help the court

make a reliable determination with respect to the Petitioner's claim.[']" (Doc. 80, #2009 (quoting *Herrera v. Collins,* 506 U.S. 390, 444 (1993) (Blackburn, J., dissenting))).

The Court rejects Penland's argument that the Magistrate Judge denied his Motion for Discovery "simply because counsel needs to be appointed." While the Magistrate Judge expressed concern that Penland's requested discovery would be expensive, the Magistrate Judge's primary reason for rejecting the motion was that the results of discovery would be inadmissible under *Pinholster*. And on that front, Penland's Objections offer no response the Magistrate Judge's concerns.

Moreover, the Court finds the Magistrate Judge's concerns with regard to the admissibility of any new discovery are well-founded. "*Pinholster* precludes consideration of new evidence developed in habeas corpus as to claims that the state courts adjudicated on the merits." *Johnson v. Bobby,* No. 2:08-cv-55, 2018 WL 1382455, at *7 (S.D. Ohio Mar. 19, 2018). Thus, this Court has found that "*Pinholster*'s holding must be taken into consideration to determine whether discovery is warranted." *Id.* That said, the Court has recognized that discovery may be appropriate in habeas cases under certain circumstances, for example, "if the Court determines from the existing record that the state court['s] decision was unreasonable under § 2254(d); if a claim was not adjudicated on the merits but is otherwise properly before the Court for habeas review; or if the Court is considering whether to excuse a procedural default." *Id.* at *8 (citing *Caudill v. Conover*, 871 F. Supp. 2d 639, 649 (E.D. Ky. 2012)). But, while *Pinholster* does not completely bar

discovery in a habeas case, Penland must demonstrate that one of these special circumstances applies—which his Objections fail to do.

Accordingly, because the Court finds that Penland has failed to demonstrate good cause, the Court **OVERRULES** Penland's Objections (Doc. 80) to the Magistrate Judge's Order (Doc. 75) denying his Motion for Discovery (Doc. 38).

## MOTION FOR THE APPOINTMENT OF COUNSEL

Penland has twice moved for the appointment of counsel (Docs. 32, 35). The Magistrate Judge denied both of those motions, (Docs. 33, 39), explaining that:

> [u]nfortunately, although the appointment of counsel in non-capital [habeas] cases is authorized [by Habeas Rule 8(c)], Congress has never appropriated sufficient funds to make appointment possible in cases where appointment is permitted but not mandated. The same source of funds from which counsel would be paid must also fill the federal courts' needs for appointed trial counsel (in any case, misdemeanor or felony) where incarceration is possible, appointed appellate counsel, and in capital cases. Because of the scarcity of funds with which to pay counsel, the Court has limited appointment to those non-capital cases where appointment is mandated, i.e., where an evidentiary hearing is required.

(Dec. 6, 2019, Order, Doc. 39, #1613–14 (quoting Dec. 3, 2019, Order, Doc. 33, #1371)). Penland filed Objections (Doc. 42) on December 16, 2019. In his Objections, Penland appears to concede that the appointment of counsel is not mandatory in this case. (*see id.* at #1635). Nonetheless, he argues that "[t]he arbitrary denial of counsel based on reserving funds where appointment is mandated is a departure from the Criminal Justice Act and an abuse of discretion." (*Id.*). Penland reiterates the merits of his ineffective assistance of counsel and prosecutorial misconduct claims, and argues that his ability to investigate, obtain affidavits, and conduct depositions that would advance these claims "is seriously impaired by his incarceration." (*Id.* at #1635–36).

23

Thus, Penland concludes that the Court should appoint counsel in this case to serve "the interest of justice." (*Id.* at #1636).

In his May 4, 2020, Order (Doc. 75), the Magistrate Judge responds to Penland's Objections. The Magistrate Judge notes that many habeas petitioners, like Penland, argue that an attorney would provide substantial assistance in prosecuting their cases. (*Id.* at #1977). The Magistrate Judge also observes that "[s]imilarly, many habeas petitioners are far less literate and capable of pursuing claims in this Court tha[n] Penland appears to be." (*Id.*). Nonetheless, the Magistrate Judge reiterates that it remains "the common practice of the Magistrate Judges of this Court" to appoint counsel only when doing so is mandatory under the Criminal Justice Act. (*Id.*). Accordingly, the Magistrate Judge recommends that this Court overrule Penland's Objections to the denial of his Motions to Appoint Counsel. (*Id.* at #1977–78).

In his July 24, 2020, Objections (Doc. 80), Penland responds to the Magistrate Judge's recommendation. Penland states that "[a]lthough the Court notes that Penland is far less literate than most habeas petitioners, the Court denied all of Penland's request[s] for Appointment of Counsel. The Honorable Magistrate does not allege Penland's claims are frivolous and in fact notes that the Honorable Magistrate acknowledges that counsel is needed to conduct depositions but denies the appointment of counsel on budgetary grounds." (Jul. 24, 2020, Obj., Doc. 80, #2010).

The Court rejects Penland's arguments. To begin, Penland appears to misinterpret the Magistrate Judge's statement that "many habeas petitioners are far

less literate and capable of pursuing claims in this Court tha[n] Penland appears to be." Contrary to Penland's argument, this indicates that the Magistrate Judge deemed Penland *more* capable of prosecuting his own claims than many other petitioners—not less. Indeed, Penland's Objections in this case largely bear that out. While the Court finds Penland's arguments unpersuasive, Penland presents them in a cogent and thoughtful fashion.

Further, Penland's argument that his Motion for the Appointment of Counsel should have been granted because his claims are non-frivolous misses the mark. In determining whether to appoint habeas counsel where such an appointment is not otherwise mandatory, the relevant inquiry is not only whether the petitioner's claims are frivolous. Rather, "[t]he decision to appoint counsel for a federal habeas petitioner is within the discretion of the court and is required only where the interests of justice or due process so require." *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986) (citations omitted). In making that determination, courts "should consider the legal and factual complexity of the case, the petitioner's ability to investigate and present his claims, and any other relevant factors." *Shine-Johnson v. Warden,* No. 2:20-CV-01873, 2020 WL 8574880, at *1 (S.D. Ohio Apr. 24, 2020) (internal quotation marks and citations omitted).

Here, Penland fails to make the requisite showing that the appointment of counsel is appropriate. Penland primarily argues that the Court should grant him counsel because his ability to investigate, obtain affidavits, and conduct depositions that would advance his claims "is seriously impaired by his incarceration." (Dec. 16,

2019, Obj., Doc. 42, #1635–36). But while appointed counsel might be helpful, Penland does not explain how his case is meaningfully more factually or legally complex than those of other habeas petitioners who could make the same argument. Moreover, the Court observes that—while these Objections were pending—Penland obtained and subsequently fired his own counsel. (Notices of Appearance, Docs. 95, 96; Mot. to Discharge Counsel, Doc. 103). In his Motion to Discharge Counsel[6], Penland explained that he fired his lawyers because "the parties are not in agreement on matter[s] concerning [Penland's] representation in this cause." (Mot. to Discharge Counsel, Doc. 103, #2348). The fact that Penland previously had attorneys at his disposal and voluntarily chose to revert to pro se status undercuts his argument that appointed counsel is necessary to advance the interests of justice in this case. For those reasons, Penland's Objections (Doc. 42) to the Magistrate Judge's Order (Doc. 39) denying Penland appointed counsel are **OVERRULED**.

## MOTION FOR AN EXPERT

On January 19, 2020, Penland filed an ex parte "Motion for Authorization Expense for Expert" (Doc. 62). On January 21, 2020, the Magistrate Judge issued an Order (Doc. 63) unsealing and denying Penland's Motion because (1) the Criminal Justice Act does not authorize "applications for expert funds by pro se litigants," and (2) Penland has failed to show "that the result of any such expert review would be

---

[6] After Penland filed his Motion to Discharge Counsel (Doc. 103), the Magistrate Judge responded and observed that, because Penland's counsel was not court appointed, he was free to fire them without asking leave of the court. (February 22, 2022, Order, Doc. 104).

admissible in evidence, given the limitations on post-conviction evidence in *Cullen v. Pinholster*, 563 U.S. 170 (2011)." (Doc. 63, #1775).

Penland filed Objections (Doc. 66) to the Magistrate Judge's Order (Doc. 63) denying him funds to appoint an expert. As best the Court can discern, Penland appears to argue that *Pinholster* is inapplicable to his claims because he procedurally defaulted on them. (Doc. 66, #1780). Thus, he argues, "these claims are not entitled to AEDPA consideration under 28 U.S.C. § 2254(d)(1) or (2)." Rather, "Penland asserts that his Seventh and Eighth claims fall under § 2254(e)." (*Id.*).

The Court struggles to follow Penland's Objections on this point. Penland appears to concede in his Objections that his Seventh and Eighth Claims are procedurally defaulted. However, "[f]ederal courts cannot consider procedurally defaulted claims unless the petitioner establishes cause for the default and prejudice, or that a miscarriage of justice will result from the default." *Rasul v. Gray*, No. 19-4073, 2020 U.S. App. LEXIS 5888 at *5–6 (6th Cir. Feb. 26, 2020) (citation omitted).

Here, Penland has not shown cause, prejudice, or a miscarriage of justice sufficient to excuse his procedural default. More importantly, even if the Court were to excuse Penland's procedural default, Penland would still be required to show that the results of any expert investigation would be admissible under *Pinholster*—which he has failed to do. *Johnson,* 2018 WL 1382455, at *8. Thus, because Penland has not shown that the Court would be able to consider the results of an expert investigation,

Penland's Objections (Doc. 66) to the Magistrate Judge's Order (Doc. 63) denying him expenses for an expert are **OVERRULED**.[7]

### CONCLUSION

For the reasons stated above, the Court **OVERRULES** Penland's Objections dated November 5, 2019 (Doc. 29), December 16, 2019 (Doc. 42), January 5, 2020 (Doc. 60), January 30, 2020 (Doc. 66), March 9, 2020 (Doc. 74), and July 24, 2020 (Doc. 80).

**SO ORDERED.**

April 28, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

[7] Because the Court finds that Penland has failed to show the results of any expert investigation would be admissible, it declines to consider his argument that the Magistrate Judge's denial of authorization based on Penland's pro se status was unconstitutional.