## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**ALEX PENLAND,**

      **Petitioner,**

        **v.**

**WARDEN, TOLEDO
CORRECTIONAL INSTITUTION,**

      **Respondent.**

        **Case No. 1:18-cv-648
JUDGE DOUGLAS R. COLE
Magistrate Judge Merz**

### <u>OPINION AND ORDER</u>

This cause comes before the Court on the Magistrate Judge's Report and Recommendations ("R&R") advising the Court to dismiss Petitioner Alex Penland's Habeas Petition with prejudice. For the reasons discussed below, the Court **ADOPTS** the R&R (Doc. 113) and **DISMISSES** Penland's Petition (Doc. 1) **WITH PREJUDICE**. Further, the Court **DENIES** Penland's Objections to the Order Denying his Motion for Reconsideration (Doc. 114) **AS MOOT**.

### BACKGROUND

**A.**    **Factual Background And Trial Proceedings**

Because the factual basis of Penland's conviction matters to this Opinion, the Court begins there. In doing so, the Court relies on the Ohio First District Court of Appeals' recitation of the facts. 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998).

Start with the facts the parties agree upon as reflected in the state court record. On July 25, 2014, Penland shot and killed Damien Cure in the parking lot of a bar.

(Doc. 8, #126). Before the shooting, Penland had been relaxing at the bar with his girlfriend. (*Id.*). Cure entered the bar. (*Id.*). Once Penland saw Cure, Penland immediately left the bar and began walking to his car. (*Id.*). Cure followed Penland out, repeatedly asking Penland why he was going to his car. (*Id.*). Both walked to their vehicles. (*Id.*). Penland retrieved a gun and shot Cure. (*Id.*). At some point, Penland too was hit. (*Id.*). Police found a gun in Cure's hand, but never located Penland's firearm. (*Id.*). The grand jury indicted Penland for murder (along with a weapons charge and a drug charge). (*Id.* at #30–32).

Penland went to trial in May 2015. He took the stand, claiming self-defense. In Penland's telling, he had heard rumors that Cure intended to rob and kill him. (Doc. 8-4, #885–86). Once Cure arrived in the bar that night, Penland immediately left to avoid an encounter. (*Id.* at #885). After leaving, Cure followed him. (*Id.* at #889). As Cure tailed him, Penland claims Cure threatened to kill him. (*Id.*). Cure eventually walked to his own vehicle and got in, allegedly telling Penland he was retrieving his gun. (*Id.* at #890–91). Scared, Penland retrieved a loaded handgun[1] from his car. (*Id.* at #891). Turning to Cure, Penland claims that he saw Cure aiming a silver gun at him. (*Id.* at #892–93). The shooting started. (*Id.*). While firing, Penland walked towards Cure's vehicle and outstretched his arm inside the now-shattered car window to shoot point-blank. (*Id.* at #911). In the ensuing moments, Penland claims he was hit twice. (*Id.* at #892). And in Penland's telling, he did not desire to shoot or kill Cure. (*Id.* at #910). Penland only fired to "stop [Cure] from hurting" him. (*Id.* at

---

[1] Penland claims that the gun belonged to his wife. (Doc. 8-4, #909). He also claims he did not load it himself, but assumed it was loaded when he pulled the trigger. (*Id.*).

#910–12). Of course, this is somewhat inconsistent, as Penland's admitted method of "stopping" Cure necessarily meant shooting him. In any event, Penland vigorously denied any interest in harming Cure. (*Id.* at #911–12).

Prosecutors told a different story—one in which Penland was the aggressor. In the prosecutors' version, Penland believed Cure had recently raided the home of Penland's girlfriend looking for Penland, and as a result, Penland wanted to take revenge on Cure. (*See* Doc. 8-4, #918–19). According to prosecutors, Penland had commented to his girlfriend that he was "not going to let that n***** threaten me anymore." (*Id.* at #925). So when Penland saw Cure that night at the bar, Penland quickly headed for his car to get his gun. (Doc. 8-5, #969). And prosecutors said Penland did not hesitate to follow through on his threat, immediately shooting Cure as soon as he could. (*Id.* at #969–70).

To bolster the state's case, prosecutors introduced two key pieces of evidence. First, video recordings captured by surveillance cameras both inside and outside the bar. (*See, e.g.*, *id.*). The Court has not seen these videos but has reviewed trial testimony describing their contents in detail. Second, eyewitness testimony from Steven Breuing, who owned the bar where the shooting occurred. (*See, e.g.*, *id.*). While (allegedly) witnessing the events in the bar's parking lot, Breuing says he stood just below where a camera was mounted and recording. (Doc. 8-3, #770–71).

Breuing factors centrally into Penland's objections here. After the shooting, Breuing ran inside the bar and called 911. (*Id.* at #759). The operator three times asked Breuing if he had seen anything. (Traverse, Doc. 34, #1540). Finally, Breuing

told the operator: "No. No, I just heard the guns going off." (*Id.*). At trial, Penland's counsel did not ask Breuing about this call or about that statement.

In addition, prosecutors strengthened their case with testimony from investigators and experts. Medical experts from the coroner's office testified that Cure had been found with bullet wounds in the back of his left arm and in his chest—consistent with Cure taking a defensive posture while being shot. (Doc. 8-4, #847–49, 854–55). Investigators testified that no bullet holes were identified in the vehicles that were near or behind Penland. (Doc. 8-3, #667).

Ultimately, the jury convicted Penland of murder. (Doc. 8, #65).[2] The trial court sentenced him to 21 years to life incarceration. (*Id.* at #75).

## B.  State Postconviction Proceedings

Assisted by new counsel, Penland appealed. The First District Court of Appeals ordered the record filed on or before October 14, 2015. (Doc. 8, #82). Penland raised seven assignments of error to the First District.

1.  The court abused its discretion in granting the motion to consolidate indictments.

2.  The court abused its discretion in allowing in testimony of an unrelated robbery that the appellant was not named in as either a victim or defendant.

3.  The trial court erred to the prejudice of defendant-appellant as there was insufficient evidence to convict.

4.  The trial court erred to the prejudice of defendant-appellant because the verdict was against the manifest weight of evidence.

---

[2]  The jury also convicted him of having a weapon under disability and trafficking in heroin (*id.* at #67–68), but those convictions do not factor into these habeas proceedings.

5. The defendant received ineffective assistance of trial counsel.

6. The imposition of a consecutive sentence on the weapon under disability charge, when there was already a gun specification, was not supported by the record.

7. The defendant-appellant's right to a fair trial was compromised by cumulative error.

(*Id.* at #83–106). On May 6, 2016, the appellate court affirmed Penland's conviction. (*Id.* at #126).

Penland did not immediately seek review by the Ohio Supreme Court. Instead, on June 27, 2016, he filed a pro se application for a delayed reopening of his direct appeal under Ohio Rule of Appellate Procedure 26(B). (*Id.* at #129). In that application, Penland accused his appellate counsel of ineffective assistance for failing to raise five more assignments of error on direct appeal:

1. When defense counsel fails to object to inappropriate questions designed to elicit inadmissible evidence, fails to object to misstatements of law and known facts, fails to object to state prosecutor's vouching for its witness's [sic], and fails to object to inappropriate comments, and fails to investigate and call witness's favorable to appellant, the appellant receives ineffective assistance of counsel.

2. It is inexcusable for the Prosecution to continue a line of jury argument after an objection has been made and sustained.

3. Prosecutor's deliberated [sic] act of withholding known evidence from the jury and other acts constitute Prosecutorial Misconduct.

4. The trial court abused its discretion when it failed to use its mandatory sua sponte duty to stop improper argument of the government.

5. Where during a trial numerous error [sic] [occur] that taken together prejudice a fair trial, a new trial should be ordered.

(*Id.* at #131–38).

5

The First District denied the application on multiple grounds, finding his appellate counsel had not been ineffective. (*Id.* at #242). First, Penland's attempt to add to his initial appeal would push his filing over the maximum page limit. (*Id.* at #242). Second, Penland's appellate counsel could not have been deficient in failing to raise claims about the "state's failure to disclose a witness's allegedly exculpatory statements" and his trial counsel's failure to raise a defense along these lines. (*Id.* at #243). That was so, according to the First District, because "[t]hose proposed challenges depend for their resolution upon evidence outside the trial record." (*Id.*). As a result, these challenges had to be raised in a timely postconviction petition under Ohio Revised Code § 2953.21, rather than on direct appeal. (*Id.*). Third, the First District held Penland's appellate counsel had not been deficient for failing to raise claims based on prosecutorial misconduct or Penland's trial counsel ineffectiveness for not objecting. (*Id.*). In cursory fashion, the appellate court found neither supposed error prejudiced him. (*Id.*). Finally, the appellate court found that Penland was not entitled to relief for "cumulative error." (*Id.*).

Only then did Penland appeal his conviction to the Ohio Supreme Court. On July 7, 2017, Penland noticed an untimely appeal and moved for delayed appeal. (*Id.* at #245, 248). He claimed he mistakenly believed his Rule 26(B) motion tolled the deadline to notice his appeal. (*Id.* at #249). The Ohio Supreme Court denied review without an opinion. *State v. Penland*, 81 N.E.3d 1270 (Ohio 2017).

On September 23, 2016, Penland claims he petitioned for postconviction relief under Ohio Revised Code § 2953.21. (Doc. 34-1, #1543). The materials Penland

submitted with his traverse include what looks like a cover sheet from that petition that the state court clerk date stamped and returned to Penland. (*Id.*). However, for some reason, the compiled state record does not include Penland's actual petition. Penland claims he raised two issues in this petition:

1.  When counsel fails to investigate and call witnesses favorable to defendant, the defendant receives ineffective assistance of counsel; and

2.  When counsel suffers from a conflict of interest, defendant receives ineffective assistance of counsel.

(Obj. to R&R, Doc. 117, #3469).

While the Court does not have Penland's state postconviction petition, the Court assumes Penland raised the same three principal factual allegations there as those he now raises in these habeas proceedings. First, counsel did not interview or call to the stand Miranda Austin. Austin claims to have witnessed the shooting, telling police she saw a shooter fleeing the scene in a "dark color shirt/dark color denim jeans."(Doc. 8, #211). Second, counsel did not listen to Breuing's 911 call or impeach him with his statement during that call denying he saw anything. (*Id.* at #320–21). Third, counsel suffered from a conflict of interest because he simultaneously represented Kenyon Barnes in an unrelated prosecution. That is a conflict, Penland says, because Penland believes that Barnes participated in the plot to kill Penland, and that the dark-clothed person Austin saw flee from the scene that evening was in fact Barnes. Three days after the date stamp indicates the petition was filed, the trial court summarily denied Penland's petition, based on that court's consideration of the petition "and all materials and law pertinent to" it. (*Id.* at #259).

Penland appealed this denial to the First District. (*Id.* at #262). His appeal maintained those same issues and added an assignment of error for the trial court's failure to conduct an inquiry into his counsel's conflict of interest. (*Id.* at #275).

The First District denied the appeal on March 7, 2018. (*Id.* at #295). Although acknowledging the trial court apparently had entered judgment on a postconviction petition, the appellate court stated "the record does not reflect the filing … of a [§ 2953.21 petition] seeking postconviction relief." (*Id.* at #296). In other words, the appellate court concluded that the trial court record included no postconviction petition. As a result, the court held "the record cannot be said to manifest the errors of which Penland now complains." (*Id.*). No one knows why the record did not include Penland's petition.

Penland appealed to the Ohio Supreme Court on April 23, 2018. (*Id.* at #297–300). There, Penland pushed a new issue relating to the trial court's refusal to announce findings of fact and conclusions of law when denying Penland's postconviction petition. (*Id.* at #300). But Penland did not elevate his ineffective assistance claims that he had (allegedly) presented to the trial court and then to the appellate court in his postconviction proceedings. The Ohio Supreme Court denied review. (*Id.* at #315).

On May 15, 2018, Penland filed an Ohio Rule of Civil Procedure 60(B) motion in the postconviction case in trial court. (*Id.* at #316). His motion accused Breuing of lying to the jury when he testified to seeing the shooting and the prosecution of misconduct for allowing Breuing to lie. (*Id.* at #317–18). Penland also accused the

8

prosecution of violating *Giglio* by telling Penland's counsel the state was "unaware of any evidence favorable to the defendant," despite knowing Breuing denied seeing anything on the 911 call. (*Id.* at #320–21). Two days later, the trial court summarily denied Penland's motion. (*Id.* at #395).

Penland appealed June 18, 2018, arguing the trial court abused its discretion by not entertaining his allegations. (*Id.* at #398). The First District disagreed. *State v. Penland*, No. C-1803302019, 2019 Ohio App. LEXIS 3118 (Ohio Ct. App. July 26, 2019). Although Penland moved under Rule 60(B), the appeals court found Penland had, in effect, pursued relief under § 2953.21. *Id.* at *2. But whatever the label, Penland's request was grossly untimely under § 2953.21(A)(2). *Id.* Moreover, even in light of Penland's 911 call allegations, the appellate court found him not entitled to file a delinquent postconviction petition under § 2953.23. *Id.* at *3–4. As a result, the trial court lacked jurisdiction to consider Penland's request. *Id.* Penland again unsuccessfully sought appeal to the Ohio Supreme Court. *State v. Penland*, 157 Ohio St. 3d 1468 (2019).

## C. Habeas Proceedings

Penland filed a petition for a writ of habeas corpus on September 14, 2018, under 28 U.S.C. § 2254. (Doc. 1).[3] Penland nominally raised nine grounds for relief:

> Ground One: The trial court abused its discretion in granting the motion to consolidate indictment.

---

[3] As the R&R pointed out, although Penland seeks relief for his convictions for murder, drug trafficking, and having a weapon under disability, Penland took the stand at trial and admitted to the latter two convictions. (Doc. 113, #2408). Thus, only his murder conviction is at issue here.

Ground Two: The court abused its discretion in allowing in testimony of an unrelated robbery that petitioner was not named in as either a victim or defendant.

Ground Three: The court erred to the prejudice of petitioner because the verdict was against the manifest weight of the evidence.

Ground Four: The trial court erred to the prejudice of the petitioner as there was insufficient evidence to convict.

Ground Five: The imposition of consecutive sentence on weapon under disability when there was already a gun specification was not supported by the record.

Ground Six: Petitioner Penland's right to a fair trial was compromised by cumulative error.

Ground Seven: Petitioner Penland was deprived of his constitutional due process rights to a fair trial when the prosecutor deliberate act of withholding known evidence from the jury, and other acts constitute prosecutorial misconduct, the cumulative effect of which denied the petitioner of a fair trial.

Ground Eight: Petitioner Penland was deprived of his right to effective assistance of counsel guaranteed by the United States Constitution, (A) due to counsel's failure to investigate and present witnesses to support self-defense, (B) failure to impeach prosecution witness with known evidence, (C) engaging in a conflict of interest, (D) failure to object to prosecutorial misconduct, the cumulative effect of which denied petitioner a fair trial.

Ground Nine: The procedural default doctrine is inapplicable and petitioner has otherwise established good cause and actual prejudice avoiding any procedural default raised in post-conviction collateral proceedings.

(*Id.* at #5–6). After the Magistrate Judge ordered, and then dissolved, a stay (Docs. 20, 26), Penland filed an extensive traverse on December 2, 2019, totaling 145 pages. (Doc. 34). Penland also attached exhibits supporting his Petition. (Doc. 34-1).

Penland then filed a series of motions and objections. Many have been resolved, but one matter remains (beside the disposition of his habeas petition itself). On

February 25, 2020, Penland moved to file his Third Amended Petition. (Doc. 71). The Magistrate Judge denied the motion. (Doc. 75). Penland objected. (Doc. 80). On April 28, 2022, the Court affirmed the Magistrate Judge's denial. (Doc. 105). Two months later, Penland moved for reconsideration. (Doc. 111). The Magistrate Judge issued an Order denying the motion for reconsideration four days later. (Doc. 112). Penland objected to that Order (Doc. 114), and that Objection remains pending.

Finally, the Magistrate Judge issued an R&R on June 17, 2022, advising the Court to dismiss Penland's Petition with prejudice. (Doc. 113, #2433). The R&R found each of Penland's grounds procedurally defaulted. (*See* Doc. 113).

Penland objected. (Doc. 117). Read generously, Penland raises three challenges: (1) his prosecutorial misconduct ground is meritorious; (2) his ineffective assistance ground is meritorious; and (3) his Sixth Amendment's Confrontation Clause rights were violated.[4] (*See id.*). Penland devotes almost his entire filing to arguing the merits of his claims. At the conclusion, he turns to procedural default:

> Mr. Penland did submit to this court via (ECF No. 34) [his traverse] evidence of cause to excuse any perceived procedural default. Mr. Penland adopts by reference and incorporates (ECF No. 34) as if it were fully rewritten right here.

(Doc. 117, #2490). That's it. The matter is now ripe.

In sum, before the Court for decision are the R&R advising the Court to dismiss Penland's Petition with prejudice (Doc. 113), along with Penland's Objections to that R&R (Doc. 117). Also before the Court are Penland's Objections (Doc. 114) to the

---

[4] He also seemingly raises a *Brady*/*Giglio* claim. For the reasons discussed below, this claim in not well taken.

Magistrate Judge's Order (Doc. 112) denying Penland's Motion to Reconsider the Denial of his Third Motion to Amend.

## LEGAL STANDARD

Under Fed. R. Civ. P. 72(b)(3), district courts review an R&R de novo after a party files a timely objection. This review, however, applies only to "any portion to which a proper objection was made." *Richards v. Colvin*, No. 2:12-cv-748, 2013 WL 5487045, at *1 (S.D. Ohio Sept. 30, 2013). In response to such an objection, "[t]he district court 'may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.'" *Id.* (quoting Fed. R. Civ. P. 72(b)(3)). By contrast, if a party makes only a general objection, that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Boyd v. United States*, No. 1:16-cv-802, 2017 WL 680634, at *1 (S.D. Ohio Feb. 21, 2017). That is, a litigant must identify each issue in the R&R to which he or she objects with sufficient clarity that the Court can identify it, or else that issue is deemed waived. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That said, here, Penland is proceeding pro se. A pro se litigant's pleadings are to be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). At the same time, pro se litigants still

must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

As to those unobjected portions of the R&R, the Court still has an obligation to review the recommendation. The advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Redmon v. Noel*, No. 1:21-CV-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (citing cases).

## LAW AND ANALYSIS

Penland's Petition proposes eight grounds for habeas relief. The R&R found each procedurally defaulted. (Doc. 113, #2414–29). As has been his habit, Penland submitted a long objection primarily re-arguing the merits of his claims. (Doc. 117). As noted, Penland raises three main challenges: (1) his prosecutorial misconduct ground is meritorious; (2) his ineffective assistance ground is meritorious; and (3) his Sixth Amendment's Confrontation Clause rights were violated.[5] (*See id.*). To begin, Penland did not raise a Confrontation Clause allegation in his Petition. (Doc. 1). Thus, his "objection" to the R&R on Confrontation Clause grounds, if it can even be called that, is not well taken.

---

[5] Penland's objection purports to also allege a *Brady/Giglio* violation. (Doc. 117, #2464–66). But Penland's Habeas Petition makes no mention of a *Brady/Giglio* violation. Granted, his Petition did raise a claim of "other acts" of prosecutorial misconduct. (Doc. 1, #6). But this is insufficient to give the Warden notice of his *Brady/Giglio* arguments. And even if Penland did properly raise a *Brady/Giglio* ground for habeas relief, as described below, he still procedurally defaulted that claim by not raising it in a timely postconviction petition.

But Penland's troubles do not end there. For two reasons, Penland's remaining objections fail: (1) Penland has offered only a general objection to the R&R's finding that he procedurally defaulted his grounds; and (2) even had Penland properly objected, his grounds are in fact procedurally defaulted. Thus, the Court **ADOPTS** the R&R's (Doc. 113) conclusion (although for slightly different reasons) and **DISMISSES** Penland's Petition (Doc. 1) **WITH PREJUDICE**. Also, the Court **DENIES** Penland's Objections to the Order Denying his Motion for Reconsideration (Doc. 114) **AS MOOT**.

## A. Penland Made A General Objection To The R&R's Finding He Procedurally Defaulted His Grounds.

As noted, when a party makes only a general objection, that "has the same effect[] as would a failure to object." *Howard*, 932 F.2d at 509. "A general objection, or one that merely restates the arguments previously presented and addressed by the Magistrate Judge, does not sufficiently identify alleged errors in the [R&R] to trigger de novo review." *Fondren v. Am. Home Shield Corp.*, No. 17-cv-2519, 2018 WL 3414322, at *2 (W.D. Tenn. July 13, 2018); *see also Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context."). In other words, "objecting" to an R&R by "incorporating by reference" arguments already considered by the Magistrate Judge is not really an objection. *Deters v. Hammer*, 568 F. Supp. 3d 883, 887 (S.D. Ohio 2021).

14

Applying that framework here, Penland did not properly object to the R&R's procedural default conclusions. As noted, the R&R found each of Penland's grounds procedurally defaulted. But Penland seemingly views default as an afterthought. His entire discussion of that topic consists of two sentences:

> Mr. Penland did submit to this court via (ECF No. 34) evidence of cause to excuse any perceived procedural default. Mr. Penland adopts by reference and incorporates (ECF No. 34) as if it were fully rewritten right here.

(Doc. 117, #2490). Docket entry 34, which Penland "incorporates," is his 145-page Traverse. (Doc. 34). As such, Penland has failed to properly object to the R&R's conclusion that he procedurally defaulted each ground in his Petition. *See Deters*, 568 F. Supp. 3d at 887 (finding plaintiff made a general objection where plaintiff incorporated arguments already considered and rejected by the Magistrate Judge).

## B. Penland Procedurally Defaulted His Claims, And He Has Not Shown An Entitlement To Evade That Default.

While damning, Penland general objection isn't the end of the story. After all, a general objection is treated as a failure to object. *Howard*, 932 F.2d at 509. And even where a party has not objected to an R&R, the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See also Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (citing cases). With that in mind, the Court examines the state record and Penland's arguments to see whether the R&R committed clear error. For the reasons discussed below, the Court finds it did not.

15

Habeas petitioners must exhaust their grounds in state court before a federal court may rule on their merits. *Rose v. Lundy*, 455 U.S. 509, 518 (1982). The exhaustion doctrine "encourage[s] state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error." *Id.* at 518–19. Failing to exhaust has consequences.

If a state procedural bar prevents a petitioner from exhausting his or her claim, the Court likewise cannot grant habeas relief. *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013). In other words, "[a] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing *Beard v. Kindler*, 558 U.S. 53, 55 (2009)). The doctrine "advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine." *Id.* (citing *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)).

There are two ways procedural default can occur. "First, a claim is procedurally defaulted where state-court remedies have been exhausted … but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule." *Lovins*, 712 F.3d at 295. In that circumstance, "there must be unambiguous state-court reliance on a procedural default for it to block [review]." *Bowling v. Parker*, 344 F.3d 487, 499 (6th Cir. 2003); *see also Skinner v. McLemore*, 425 F. App'x 491, 496 (6th Cir. 2011). And "[s]econd, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is

16

filed because of a state procedural rule." *Lovins*, 712 F.3d at 295; *see also Wright v. Lazaroff*, 643 F. Supp. 2d 971, 987 (S.D. Ohio 2009) ("[T]he federal habeas court may hold the claim procedurally defaulted 'if it is clear that the state court would hold the claim procedurally barred.'" (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989))).

The Sixth Circuit requires a multi-part test to determine whether a petitioner's unexhausted habeas claim cannot be considered in habeas due to state-law procedural default:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc); *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). As to the fourth prong, though, a petitioner can alternatively excuse their default by showing a fundamental miscarriage of justice rather than cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). As described below, however, Penland does not argue a fundamental miscarriage of justice, but only seeks to evade procedural default based on cause and prejudice. (*See* Doc. 34, #1496–506; Doc. 117, #2490).

Following the R&R, Penland's objections mainly discuss his prosecutorial misconduct and ineffective assistance of trial counsel claims. But his objections blend various allegations together. Read expansively, Penland's objections can be divided two ways—between claims of prosecutorial misconduct and ineffective assistance, and between claims evident from the trial record and those evident only through investigation outside the trial record.

17

Thus categorized, Penland presents four distinct allegations. First, prosecutors improperly withheld evidence from the jury (not evident from the trial record). (Doc. 117, #2464–66). Second, prosecutors made improper comments during trial rising to prosecutorial misconduct (evident from the trial record). (*Id.* at #2448–60). Third, Penland's counsel failed to object to prosecutors' improper comments at trial (evident from the trial record). (*Id.* at #2473). And fourth, Penland's counsel failed to investigate the case and had a conflict of interest (not evident from the trial record). (*Id.* at #2466–72, 2480–86). As explored below, Penland cannot prevail as to any.

### 1. Penland Procedurally Defaulted His Prosecutorial Misconduct Ground Alleging Prosecutors Improperly "Withheld" Evidence.

Penland claims prosecutors violated his due process rights by withholding evidence from the jury. (Doc. 117, #2464–66). First, Penland points to Breuing's 911 call as proof that Breuing did not see the shooting in person. (Doc. 34, #1540). Yet prosecutors called Breuing to testify as an eyewitness. Penland argues prosecutors knew of Breuing's comments on his 911 call and so violated Penland's due process rights by knowingly eliciting false testimony from Breuing. (Doc. 117, #2464–66). In addition, Penland argues prosecutors improperly withheld evidence of Miranda Austin's testimony from the jury by presenting Breuing as the "only eyewitness" to the shooting. (*Id.* at #2466).[6]

---

[6] Notably, Penland does not allege prosecutors concealed information from Penland and his counsel. The record reflects, and Penland admits, that "Austin was on the State's Civilian Witness List." (Doc. 8, #211; Doc. 117, #2466). The record also reflects, and Penland admits, that the 911 call audio was provided in discovery. (Doc. 8, #207; Doc. 117, #2473).

Penland did not raise this claim in his initial direct appeal. (Doc. 8, #84–87). The R&R concluded Penland's failure to do so means he procedurally defaulted this claim based on res judicata. (Doc. 113, #2426–27). The Court agrees Penland has procedurally defaulted this claim but for a different reason.

Penland first mentioned this allegation to the First District Court of Appeals in a Rule 26(B) motion to reopen his appeal. (Doc. 8, #134–38). In essence, Penland claimed his appellate counsel performed deficiently by not including in his direct appeal allegations the prosecution improperly withheld evidence from the jury. (*Id.* at #131).

The First District rejected Penland's allegations of ineffective assistance of appellate counsel. (*Id.* at #242–44). The District's reasoning, though, matters here:

> Appellate counsel was not ineffective in failing to submit assignments of error alleging that the state's failure to disclose a witness's allegedly exculpatory statements had denied Penland a fair trial … . [That] proposed challenge[] depend[s] for [its] resolution upon evidence outside the trial record. *Therefore, the appropriate vehicle for advancing [it] is a postconviction petition, not an appeal.*

(*Id.* at #243 (citing *See State v. Perry*, 226 N.E.2d 104, 106 (Ohio 1967) (emphasis added))). In other words, Penland could *only* raise this claim in a timely postconviction petition.

Under Ohio law, a petitioner must submit for postconviction relief within 365 days after the transcript of the proceedings has been filed for appeal. Ohio Rev. Code § 2953.21(A)(2). An Ohio court cannot entertain an untimely or successive petition for postconviction relief unless a "petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for

relief," or there has been intervening United States Supreme Court precedent that retroactively gives the petitioner a claim to relief. Ohio Rev. Code § 2953.23(A)(1)(a). In addition, the petitioner must demonstrate by "clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense" in question. *Id.* § 2953.23(A)(1)(b).

As best the Court can tell, the transcript was filed with the First District Court of Appeals on or before October 14, 2015. (Doc. 8, #82). (To be as generous as possible to Penland, the Court will assume the transcript was filed on October 14, 2015.) And to his credit, Penland did apparently file a timely § 2953.21 postconviction petition. Although its contents do not appear in the state court record,[7] Penland provided a stamped cover-sheet of a petition for postconviction relief filed on September 23, 2016—within the one-year limit. (Doc. 34-1, #1543; Doc. 117, #2468–69). According to Penland, he raised two claims in that timely petition:

1.  When counsel fails to investigate and call witnesses favorable to defendant, the defendant receives ineffective assistance of counsel; and

2.  When counsel engages in a conflict of interest defendant receives ineffective assistance of counsel.

(Doc. 117, #3469). Taking Penland at his word, then, he did not raise any allegation of prosecutorial misconduct in his timely postconviction petition.

---

[7] The Court has never reviewed the contents of Penland's September 23, 2016, postconviction petition. And judging from the Warden's Reply, they have not either. In any event, the cover sheet provided by Penland is stamped by the Hamilton County Clerk of Courts, so the Court takes Penland at his word he filed such a petition and raised the two claims discussed.

Instead, Penland first raised a claim of prosecutorial misconduct in his 2018 motion seeking postconviction relief. (Doc. 8, #317–18). The trial court summarily denied his motion, and Penland appealed. (*Id.* at #395, 396). The First District, though, determined Penland had, in effect, filed an untimely § 2953.21 postconviction petition[8] without a qualifying justification, depriving the trial court of jurisdiction to even entertain Penland's claim. *State v. Penland*, No. C-1803302019, 2019 Ohio App. LEXIS 3118, at *2–3 (Ohio Ct. App. July 26, 2019). The Ohio Supreme Court thereafter denied review without opinion, making the First District's opinion the final reasoned judgment in Penland's state court saga.

On those facts, Penland procedurally defaulted this ground by failing to comply with § 2953.21's requirements. *See Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 464 (6th Cir. 2015). By not raising any allegation of prosecutorial misconduct in his timely postconviction petition, he deprived the Ohio courts of the ability to consider the merits of his allegation. *See State v. Apanovitch*, 121 N.E.3d 351, 360 (Ohio 2018) ("[A] petitioner's failure to satisfy [Ohio Rev. Code § 2953.23's statutory requirements] deprives a trial court of jurisdiction to adjudicate the merits of an untimely or successive postconviction petition.").

Ohio courts enforced this requirement in Penland's case. When he tried to bring this claim in 2018, the First District held the Ohio courts lacked jurisdiction to even entertain Penland's untimely request. *See Penland*, 2019 Ohio App. LEXIS

---

[8] Arguably, Penland actually filed a successive § 2953.21 postconviction petition, given his September 23, 2016, petition. But this distinction is of little importance here because the standards for untimely and successive petitions are the same.

3118, at *2–3. And the appellate court held Penland lacked grounds to bring an untimely postconviction petition because "he failed to satisfy the R.C. 2953.23(A)(1)(b) jurisdictional requirement for a late postconviction petition." *Id.* at *3–4.

Finally, § 2953.21's jurisdictional requirements are an adequate and independent state law grounds. *See Savage v. Warden, Pickaway Corr. Inst.*, No. 1:21-cv-33, 2022 WL 4357465, at *8–10 (S.D. Ohio Sept. 20, 2022) (holding § 2953.21's general prohibition on untimely and successive is an adequate and independent state law ground).

As for cause and prejudice, through his hundreds of pages of briefing, Penland has never discussed, let alone explained, why he did not raise his allegations of prosecutorial misconduct in his timely postconviction petition. Penland has procedurally defaulted any allegation prosecutors wrongfully withheld evidence from the jury.

### 2. Penland Procedurally Defaulted His Prosecutorial Misconduct Ground Alleging Prosecutors Made Improper Comments At Trial.

Penland separately argues prosecutors violated his due process rights by making inappropriate comments during his trial. These include claims prosecutors knowingly misrepresented the evidence, called Penland a liar, vouched for their own witnesses' credibility, and inflamed the jury. (Doc. 117, #2451–57). A common thread running through all these complaints, though, is that all were plainly evident at trial.

Despite appearing on the face of the trial record, Penland did not raise these allegations in his direct appeal. (Doc. 8, #84–87). In fact, even if one also considers Penland's entire *post-conviction* state proceedings, a state court has never properly reviewed the merits of these claims. Penland has not exhausted his claims of prosecutorial misconduct based on the prosecutors' actions at trial.

To be sure, Penland discussed these allegations of prosecutorial misconduct when seeking to reopen his direct appeal. A month after the First District rejected Penland's direct appeal, Penland moved under Rule 26(B), alleging ineffective assistance of appellate counsel. (Doc. 8, #129–38). In part, Penland claimed his appellate counsel performed deficiently by not pursuing an assignment of error claiming prosecutorial trial misconduct. (*Id.*). But the First District denied Penland's motion, finding his allegations did not warrant reopening the appeal. (*Id.* at #242). Therefore, this rejection cannot be considered a fair presentment to a state court.[9]

Given Penland's failure to fairly present these claims to any Ohio court, the R&R correctly found Penland procedurally defaulted under the doctrine of res judicata. (Doc. 113, #2426). Ohio courts routinely apply res judicata to prohibit subsequent review when a party fails to raise all evident claims in one appeal. *See State v. Perry*, 226 N.E.2d 104, 106 (Ohio 1967); *Durr v. Mitchell*, 487 F.3d 423, 432

---

[9] Granted, the First District did briefly mention the merits of Penland's prosecutorial misconduct claim to conclude Penland had not be prejudiced by any alleged appellate counsel errors. The court stated: "Nor was Penland demonstrably prejudiced by appellate counsel's failure to assign as error the other alleged instances of prosecutorial misconduct … the record makes apparent beyond any reasonable doubt that, in the absence of the … alleged instances of prosecutorial misconduct, the jury still would have found Penland guilty." (Doc. 8, #243–44). Although the appellate court did make passing mention of Penland's claim, this is far from the fair presentment contemplated by the habeas exhaustion requirement.

(6th Cir. 2007). Because Penland did not raise these claims on direct appeal, he cannot now. *Lovins*, 712 F.3d at 295; *Monzo v. Edwards*, 281 F.3d 568, 576–77 (6th Cir. 2002) (holding res judicata is "an adequate and independent state procedural ground").

Penland's procedural default precludes habeas relief unless he can show cause and prejudice. What does he offer on that front? As noted, Penland alleged ineffective assistance of appellate counsel in pursuing his direct appeal. (Doc. 8, #129). In fairness to Penland, "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will" establish cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488–892 (1986)). And Penland alleged his appellate counsel performed deficiently by failing to raise an assignment of error relating to prosecutorial misconduct at trial. (Doc. 8, #134–36, 141–44).

But the problem for Penland is that the First District heard and *rejected* Penland's ineffective appellate counsel allegations. (Doc. 8, #243–44). As the R&R noted, the Court defers to this determination "unless it is found contrary to or an unreasonable application of Supreme Court precedent." (Doc. 113, #2431 (citing 28 U.S.C. § 2254(d)(1))); *Miles v. Bradshaw*, No. 5:13-cv-1078, 2014 WL 977702, at *10 (N.D. Ohio Mar. 12, 2014) ("Petitioner failed to overcome the presumed correctness of the appellate court decision's denying his Rule 26(B) motion."). After reviewing the record, the Court agrees the First District did not unreasonably apply Supreme Court precedent in denying Penland's claim of ineffective assistance of appellate counsel.

24

Therefore, Penland cannot rely on ineffective assistance of appellate counsel as cause to excuse his procedural default.

### 3. Penland Procedurally Defaulted His Ineffective Assistance Ground Alleging His Counsel Performed Deficiently At Trial.

Turn next to Penland's claim of ineffective assistance of trial counsel for errors evident at trial. The R&R concluded Penland procedurally defaulted this claim by failing to timely appeal it to the Ohio Supreme Court. (Doc. 113, #2428). The Court agrees Penland has defaulted this claim but again on slightly different grounds.

In his direct appeal, Penland presented an assignment of error for ineffective assistance of trial counsel. (Doc. 8, #102). But there, Penland only argued his counsel "fail[ed] to use a crime scene re-constructionist when the timeline of events [was] crucial to [his] case." (*Id.*). This specific allegation (which has been exhausted) appears nowhere in his current Petition nor his Objections.

Instead, Penland now accuses trial counsel of failing to object to the prosecutors' inappropriate conduct at trial. (Doc. 117, #2467). This failure-to-object allegation has never been fairly presented to any Ohio court.[10] "[T]he doctrine of exhaustion requires that the same claim under the same theory be presented to the state courts before raising it in a federal habeas petition." *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009). As described above, Penland cannot now present this claim

---

[10] Penland did raise a similar claim in his Rule 26(B) motion to reopen his appeal for ineffective assistance of appellate counsel. (Doc. 8, #131). As described above, though, the First District did not rule on the merits of this claim, only holding Penland's appellate counsel had not been constitutionally ineffective. (*Id.* at #244).

because Ohio courts would enforce the procedural bars of both res judicata and the prohibition on subsequent § 2953.21 postconviction petitions. *Lovins*, 712 F.3d at 295.

To evade his default, Penland again claims he has cause from his appellate counsel's alleged ineffective assistance. For the reasons already discussed, Penland has not shown cause. This claim remains procedurally defaulted.

### 4. Penland Procedurally Defaulted His Ineffective Assistance Ground Based On His Counsel's Alleged Failure To Investigate And Conflict Of Interest.

That leaves Penland's remaining ineffective assistance of trial counsel grounds—those grounds that require evidence beyond the trial court record. On this front, he claims he received ineffective assistance of trial counsel from his counsel's (1) failure to investigate relevant impeachment and exculpatory evidence, and (2) conflict of interest from representing a potentially exculpatory witness. (Doc. 117, #2469–70). The R&R found these claims procedurally defaulted because Penland failed to timely appeal his ineffective assistance claim on direct appeal to the Ohio Supreme Court. (Doc. 113, #2428–29). This Court agrees Penland is not entitled to habeas relief, although the Court relies on different reasons.

### a. Penland Procedurally Defaulted This Ground.

Ineffective assistance of trial counsel claims based on counsel's failure to investigate or counsel's conflict of interest often will not be evident at trial. *See, e.g.*, *Schooler v. Erwin*, No. 3:05-cv-259, 2006 WL 1071840, at *4 (S.D. Ohio Apr. 21, 2006). Instead, under Ohio law, defendants typically raise these claims in § 2953.21 petitions for postconviction relief. *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005).

As discussed, a petitioner generally has one year to bring such a petition following the filing of the trial transcript with the appeals court. Ohio Rev. Code § 2953.21(A)(2)(a). Here, Penland claims to have petitioned for postconviction relief within that one-year window on September 23, 2016. (Doc. 117, #2468–69). And his petition (allegedly) included his failure to investigate and conflict of interest allegations against his trial counsel, along with supportive evidence. (*Id.*). In other words, Penland started off on the right track.

Yet inexplicably, Penland found himself derailed by an apparent state recordkeeping error. Three days after Penland petitioned, the trial court issued a summary denial without referring to his specific claims. (Doc. 8, #259). When Penland appealed, the First District reported that the record contained no filing from Penland *at all*. (*Id.* at #295). The First District then affirmed the trial court because "the record does not reflect the filing … of a motion seeking postconviction relief" and so "the record cannot be said to manifest the errors of which Penland now complains." (*Id.* at #296). This is all the more bizarre because Penland has provided this Court his purported postconviction petition's cover sheet—apparently stamped as received by the county clerk of courts on September 23, 2016. (Doc. 34-1, #1543). Moreover, the trial court's denial referenced considering Penland's "motion and all materials" before finding them not well taken. (Doc. 8, #259). Although perhaps form language, the trial court's order implies Penland did in fact file a motion and accompanying support for that motion.

27

In any event, Penland appealed to the Ohio Supreme Court. (*Id.* at #297). Notably, though, he seemingly abandoned his ineffective assistance allegations. On appeal, he only pressed the issue of whether the trial court erred by not issuing "findings of facts and conclusions of law when the court denies [] postconviction relief pursuant to RC § 2953.21(C)." (*Id.* at #300). But recall exhaustion requires a petitioner give Ohio courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). By not elevating his ineffective assistance claims to the Ohio Supreme Court, Penland has not fully exhausted them.

And now these claims are procedurally defaulted. If tomorrow Penland returned to the Ohio Supreme Court to exhaust, that court would decline review under res judicata. Again, Ohio courts routinely apply res judicata to available but unraised issues on appeal. *See State ex rel. Essig v. Blackwell*, 817 N.E.2d 5, 12 (Ohio 2004); *Perry*, 226 N.E.2d at 106. And, again, res judicata is routinely enforced as a procedural default. *See Durr*, 487 F.3d at 432; *Ream v. Wainwright*, No. 18-3257, 2018 WL 3090778, at *2 (6th Cir. June 1, 2018) ("Ream's remaining claims were … not brought before the Ohio Supreme Court on direct appeal, and because these claims … could have been raised on direct appeal … review in the Ohio courts is now barred under the doctrine of res judicata.").

28

### b. Penland Has Perhaps Shown Cause But Cannot Show Prejudice To Evade His Default.

That isn't the end of the story though. Recall Penland may excuse his procedural default by showing cause and prejudice. And in fairness, Penland has some claim to "cause" here. True, "ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004). But cause will be normally found where a petitioner can show "some objective factor external to the defense impeded [their] efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. To illustrate, cause exists where a petitioner defaulted as the result of "some interference by officials" that "made compliance" with the procedural rule "impractical." *Amadeo v. Zant*, 486 U.S. 214, 222 (1988) (quoting *Murray*, 477 U.S. at 488).

Here, it appears the state court system may well have lost Penland's timely § 2953.21 petition. To this day, no party has located Penland's filing. (*See* Doc. 9, #1138). Inmates proceeding pro se face a daunting host of challenges in prosecuting their appeals and habeas petitions. Often, inmates default through their own error. But they should not bear the risks associated with state recordkeeping errors.

Ohio law obligated the clerk of the court, not Penland, to transfer the lower court record to the First District.[11] *See Cobb v. Cobb*, 403 N.E.2d 991, 992–93 (Ohio

---

[11] Penland perhaps could have moved under Ohio Rule of Appellate Procedure 9(E) to correct the omissions in the record. Ohio R. App. P. 9(E); *Cobb*, 403 N.E.2d at 993. But he would have needed notice of the omission first. As an incarcerated pro se petitioner, it is unclear whether Penland received adequate notice of the omission prior to the First District's ruling. And the First District could have—perhaps should have—attempted to fix the omission "of its own initiative." Ohio R. App. P. 9(E).

1980). In effect, the State's error deprived Penland of his one bite at the postconviction-relief-apple. Whether this error was intentional or inadvertent, the Court finds Penland's default can be, at least in part, attributed to "some interference by officials." *Amadeo*, 486 U.S. at 222. Thus, Penland has shown cause.[12]

But that is not enough. Even with cause, Penland must separately demonstrate prejudice to excuse his procedural default. To show prejudice, Penland "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his *actual and substantial* disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis added). In the context of ineffective assistance of trial counsel, a defaulted claim creates a "substantial disadvantage" where the petitioner "demonstrate[s] that the claim has some merit." *Martinez v. Ryan*, 566 U.S. 1, 14 (2012).

Therefore, to properly evaluate the "prejudice" created by Penland's procedural default, the Court must perform a cursory analysis of Penland's relevant ineffective assistance claims. Before diving in, the Court offers a summary: Penland has not carried his burden to show ineffective assistance of counsel because, given the overwhelming evidence against him, he would have been convicted regardless. And because the result would be the same anyway, Penland has not shown the "actual

---

[12] True, Penland still could have appealed his ineffective assistance claims to the Ohio Supreme Court anyway. But as the First District denied Penland's petition without seeing or reviewing the merits, it is unlikely the Ohio Supreme Court could have given his petition a substantive review.

and substantial disadvantage" necessary to evade his procedural default. *Frady*, 456 U.S. at 170.

Generally, ineffective assistance of counsel has two prongs. First, deficient performance—"counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"In assessing performance, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690–91). As for prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable" based on "the totality of the evidence." *Darby v. Brown*, No. 21-1001, 2022 WL 558042, at *4 (6th Cir. Feb. 24, 2022) (quoting *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), and *Towns v. Smith*, 395 F.3d 251, 257 (6th Cir. 2005)).

Alternatively, ineffective assistance can be shown if counsel labored under a conflict of interest. *Gillard v. Mitchell*, 445 F.3d 883, 890 (6th Cir. 2006). In either case, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process

that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

Begin with Penland's failure to investigate claims. "[T]rial counsel has a duty to investigate his case." *Steward v. Wolfenbarger*, 468 F.3d 338, 256 (6th Cir. 2006). Accordingly, trial counsel's failure to investigate certain witnesses can constitute deficient performance. *See, e.g.*, *Towns*, 395 F.3d at 258 ("This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence."). To state this type of claim, a petitioner must explain "what evidence counsel should have pursued and how such evidence would have been material." *Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) (citing *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997)). That said, while a failure to investigate perhaps evidences deficient performance, a petitioner must still demonstrate resulting prejudice. *See, e.g.*, *id.* at 258; *Stewart*, 468 F.3d at 357–58.

Penland makes two failure-to-investigate allegations. First, his counsel did not interview or call to the stand Miranda Austin, a witness the police interviewed. (Doc. 117, #2470). Second, his counsel did not review Steven Breuing's 911 audio and impeach Breuing with it.[13] (*Id.*). But even assuming these errors meant his counsel's performance fell below an objective standard of reasonableness, Penland is still not

---

[13] Penland also seemingly alleges his counsel did not discover that Breuing had (allegedly) been threated to lie on the stand. (*See* Doc. 117, #2476–77; Doc. 117-2, #2493–94). But Penland never explains how his counsel could have discovered this pre-trial. In any event, there is no record of Penland presenting this allegation to any state court, making it unexhausted and therefore procedurally defaulted for the reasons already discussed.

entitled to relief. In light of the other trial evidence, Penland has not shown these errors, either alone or cumulatively, prejudiced him.

Take Miranda Austin. Penland alleges his counsel failed to interview and call her to the stand when she allegedly could testify to seeing a potential third shooter in a "dark color shirt/dark color denim jeans" before he fled the scene. (Doc. 8, #211; Doc. 117, #2470). The Court has reviewed an affidavit from Austin to this effect. (Doc. 117-1, #2491–92). To Penland, Austin provided evidence of "an additional assailant attacking" him that could bolster this self-defense theory. (Doc. 117, #2477). Specifically, Penland believes Austin's "additional assailant" is Kenyon Barnes, who (according to Penland) knew of and participated in Cure's scheme to kill Penland. (*Id.* at #2483–85). For prejudice, Penland pointed to the prosecutor's closing remark that Penland had presented no other evidence to support self-defense. (*Id.* at #2478).

Penland's problem, though, is his own trial testimony belies any allegation of a third shooter. (*See* Doc. 8-4, #879–942). Penland based his self-defense theory on the threat posed *by Cure alone*. In presenting his defense, Penland testified only to Cure following him. (*Id.* at #887). He testified to only Cure threatening him that evening. (*Id.* at #889). And he testified to only seeing Cure hold a gun and only seeing Cure fire at him. (*Id.* at #891–92). Neither Barnes's name, nor any other's besides Cure, appears in Penland's account while he explained his perceived need to shoot in self-defense.[14]

---

[14] Another witness does testify to briefly seeing Barnes enter the bar with Cure. (Doc. 8-2, #553–54). But Penland never mentions Barnes at all.

Granted, Penland argues Austin's testimony may have unlocked a new line of argument—presumably relieving Penland of his need to testify. (Doc. 117, #2483). And he believes this "two attackers" theory would have bolstered his position at trial. He summarizes his "best defense was to contend [Cure] and [Barnes] observed … Penland's car parked in the Bar's parking lot and they decided to confront him and lure him outside to attack him." (*Id.* at #2485).

Three problems though. First, the jury saw a video of the incident. Although the Court cannot access the video itself, the trial testimony describing the video never indicates a third individual displayed in the altercation. The only two individuals described in the relevant video are Penland and Cure. (*See* Doc. 8-4, #833–34). Second, Penland cannot advance hypotheticals in conflict with his own trial testimony. He offered his testimony under oath before a jury of his peers, and the Court will not assume Penland perjured himself or intentionally omitted a justification for his shooting. *Cf. Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Third, Penland's theory that Austin saw Barnes flee is undermined by other evidence. Austin reported the fleeing shooter wore a "dark shirt." (Doc. 8, #211). Other evidence, though, suggests Barnes wore a "white shirt" that evening. (Doc. 34-1, #1547). Taken together, Penland has not shown his counsel's failure to investigate Austin prejudiced him.

Next, Breuing's 911 call. Penland alleges his counsel neither listened to Breuing's 911 call nor reviewed the transcript. (Doc. 117, #2470–71). On this call, the

dispatcher asked Breuing three times whether he had seen anything. (Doc. 34, #1540). After the third, Breuing said "No. No, I just heard the guns going off." (*Id.*). At trial, however, Breuing reported he *had* seen the shootings and described the events in detail. (Doc. 8-3, #755–59). And, supporting the prosecution's theory Penland did not kill in self-defense, Breuing testified to seeing Penland shoot first. (*Id.* at #759–60, 789). Penland argues his counsel should have impeached Breuing with his inconsistent testimony. (Doc. 117, #2472). To Penland, his counsel's error constituted not only deficient performance but also resulted in clear prejudice because a key eyewitness went unimpeached.

The Court acknowledges some sympathy for Penland's position. Assuming his counsel failed to impeach Breuing because he never listened to the 911 call, Penland has a credible allegation his counsel performed deficiently. But still, Penland has not carried his burden to show prejudice—there is no reasonable probability the result would have been different. The other trial evidence was simply too weighty, and Breuing's additions too minor, for his impeachment to have altered the outcome.

First, once again, the jury watched the video depicting the shooting. The video is damning for Penland, and Breuing's testimony by and large merely affirms what the video shows. After all, while Breuing testified to seeing the events, he also testified that the camera had a better view than he did. (Doc. 8-3, #770–71). So even if Penland's counsel had impeached Breuing, the jury still would have seen and relied on the camera's video for its superior view.

The video does not help Penland. Take, for example, the question of who was the aggressor.[15] The video depicts Penland rapidly advancing on Cure while firing and reaching through the empty car window to shoot at point-blank range. (Doc. 8-5, #911). Further, although Penland argued Cure hit him early in the exchange (Doc. 8-4, #892), the video instead shows Penland first react to being hit at the end of the gunfire. (Doc. 8-3, #662–63; Doc. 8-5, #975–76). In short, the video largely reflects Breuing's testimony.

Second, the tangible evidence favors the prosecution's theory that Penland did not kill in self-defense. Cure's wounds showed he was shot through the back of his left arm with a bullet that exited out his arm before entering his chest. (Doc. 8-4, #847–49, 854–55). Based on this evidence, prosecutors argued Cure assumed a defensive posture, holding his arm up to (in vain) shield himself. (Doc. 8-5, #972–73). And investigators located no other bullet markings in cars around Penland, further demonstrating the shots fired mostly came from Penland towards Cure. (Doc. 8-3, #667).

In sum, the jury weighed Breuing's testimony alongside the other evidence. Even had Penland's counsel attempted to impeach Breuing based on the 911 call and undermined his story, the jury still had evidence beyond a reasonable doubt to convict Penland.

---

[15] The parties dispute whether the video shows Penland hesitate with his gun in hand before firing. (Doc. 8-5, #969–70, 1013–14). But again, the jury saw the video and decided whose story to believe.

That leaves Penland's allegation his counsel labored under a conflict of interest. To begin, the Court notes Penland did not object to a conflict of interest at trial. *See Holloway v. Arkansas*, 435 U.S. 475, 484 (1978) (holding a timely objection to joint and antagonistic representation that is overruled by the trial court requires automatic reversal). Instead, he first objected in his timely postconviction petition. (*See* Doc. 117, #2468–69).

Where a defendant objects to a perceived conflict of interest after trial, a defendant received constitutionally ineffective assistance if he can show his counsel "actively represented conflicting interests" and that this "actual conflict of interest adversely affected" the lawyer's performance. *United States v. Kilpatrick*, 798 F.3d 365, 374–75 (6th Cir. 2015) (quoting *Burger v. Kemp*, 483 U.S. 776, 783 (1987)). Under these circumstances, courts will presume a counsel's conflict of interest prejudiced the defendant, resulting in a Sixth Amendment violation. *Id.* "To prove actual conflict, a defendant must 'point to specific instances in the record' and 'make a factual showing of inconsistent interests.'" *Id.* at 375 (quoting *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987)).

Applying this framework, counsel provides ineffective assistance where the conflict results in counsel taking an action detrimental to the petitioner to protect the interests of counsel's other client. *McFarland v. Yukins*, 356 F.3d 688, 706 (6th Cir. 2004). Thus, "where counsel fails to pursue a strong and obvious defense, when pursuit of that defense would have inculpated counsel's other client, and where there

is no countervailing benefit to [him] from foregoing that defense or other explanation for counsel's conduct, [it] amount[s] to evidence of disloyalty." *Id.* at 707.

"[T]he reasonableness of counsel's choice can be relevant as a factor in proving the choice was caused by the conflict." *Id.* at 706. In essence, "the more reasonable the lawyer's choice, the less likely it was the result of actual conflict." *Kilpatrick*, 798 F.3d at 375. Accordingly, counsel's choice will not result in a finding of ineffective assistance unless it is "clear that the choice was not part of a legitimate strategy, judged under the deferential review of counsel's performance prescribed in *Strickland v. Washington*." *McFarland*, 356 F.3d at 706 (citing *Strickland*, 466 U.S. 668).

Penland argues his counsel labored under a conflict by representing Kenyon Barnes in a separate prosecution starting March 9, 2015. (Doc. 34-1, #1544). Recall Penland went to trial in May 2015 (Doc. 8, #62–63), meaning his counsel represented both Barnes and Penland around the same time in different cases. And Penland says this conflict deterred his counsel from pursuing Penland's best defense. Counsel did not call Barnes to testify that Cure had (according to Penland) told Barnes he planned to kill Penland, nor to support Penland's theory that Barnes participated as a third shooter. (Doc. 117, #2483). According to Penland, his counsel's conflict adversely affected Penland by limiting the arguments counsel could raise without incriminating Barnes.

That won't cut it. First, it is unclear Penland's counsel simultaneously represented Barnes. All Penland provides is documentation showing his counsel

represented Barnes in a different prosecution. (Doc. 34-1, #1544). But Penland nowhere says what that prosecution was for or when that representation ended.

From a review of Hamilton County court records, the Court takes judicial notice that Penland's counsel represented Barnes in a prosecution for trafficking in heroin. Hamilton County Court of Common Pleas, Case #B1500731; *see also Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (recognizing courts may take judicial notice of other court records). Those records show Barnes pled guilty and was sentenced on April 30, 2015—weeks before Penland's trial. Thus, Penland has not even shown his counsel had a present conflict when he presented Penland's case to the jury.[16]

Second, Penland provides mere allegations, not evidence, that Barnes had interests antagonistic to his. To prevail, Penland needs to "make a *factual showing* of inconsistent interests." *Kilpatrick*, 798 F.3d at 375 (emphasis added). Penland simply has no evidence Barnes took part in or knew of a plot to kill Penland. All Penland provides are contemporaneous handwritten reports detailing that "KB" showed up at the bar and spoke with "Dollar" (Penland's nickname) and that someone saw "KB" in a black car with "Boo" (Cure's nickname).[17] (Doc. 34-1, #1545–46). Even assuming

---

[16] Granted, successive representation can result in a constitutionally improper conflict of interest in some circumstances. *See Moss v. United States*, 323 F.3d 445, 459–62 (6th Cir. 2003). But for the other reasons discussed, Penland has not stated a meritorious ineffective assistance claim anyway.

[17] From the Court's review of the trial transcript, Barnes's name only appears when a witness testified that Barnes entered the bar with Cure and that the two were "buddies." (Doc. 8-2, #553). But being seen with Cure, or even being "buddies" with him, is not evidence Barnes attempted to murder Penland. Notably, no one testified to seeing Barnes *leave* the bar with Cure.

"KB" refers to Kenyon Barnes, that's not evidence Barnes joined a conspiracy to kill Penland. Nothing more than Penland's speculation connects Barnes to the shooting.[18]

Third, Penland's counsel did not pursue an ineffectual defense of Penland to protect his other client (or potentially former client). Instead, the trial evidence shows he offered Penland's best defense. As noted, the prosecution introduced video evidence showing Penland and Cure alone interacting right before and during the shooting. Little could be gained by introducing a "third shooter" theory inconsistent with the video. This is particularly true given the lack of additional bullet holes in the vehicles surrounding Penland. (*See* Doc. 8-3, #667). Plainly, there is no physical evidence to support a "third shooter" theory. Thus, counsel did not fail to pursue a "strong and obvious defense" by not calling Barnes to the stand—both counsel and Penland himself offered the best defense available. *McFarland*, 356 F.3d at 707.

In summary, Penland has not shown an actual and substantial disadvantage from his procedural default because he has not shown his counsel's alleged errors prejudiced him. Penland's procedural default stands.

Finally, because the Court dismisses Penland's Habeas Petition (Doc. 1) with prejudice, the Court also **DENIES** Penland's Objections to the Order Denying his Motion for Reconsideration (Doc. 114) **AS MOOT**.

---

[18] Penland's theory is that Austin actually saw Barnes fire a gun and flee the scene. But again, this is Penland's speculation. Austin never not identified who she saw. And she believes the shooter wore dark clothes (Doc. 8, #211), while other reports suggest Barnes wore white that evening. (Doc. 34-1, #1547).

## CONCLUSION

For the reasons discussed, the Court **ADOPTS** the R&R (Doc. 113) insofar as it recommends dismissal and **DISMISSES** Penland's Petition (Doc. 1) **WITH PREJUDICE**. Further, the Court **DENIES** Penland's Objections to the Order Denying his Motion for Reconsideration (Doc. 114) **AS MOOT**. The Court **DIRECTS** the Clerk to enter judgment and **TERMINATE** this matter on the Court's docket. The Court also **DENIES** Penland a Certificate of Appealability, **CERTIFIES** pursuant to 28 U.S.C. § 1915 that any appeal of this Opinion would be objectively frivolous, and **DENIES** him leave to proceed in forma pauperis on appeal.

**SO ORDERED.**

March 23, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**